David A. Aylsworth and Julia A. Aylsworth v. Commissioner.
Aylsworth v. Commissioner
Docket No. 92547.
United States Tax Court
T.C. Memo 1963-221; 1963 Tax Ct. Memo LEXIS 121; 22 T.C.M. (CCH) 1111; T.C.M. (RIA) 63221; August 21, 1963
*121 Albert J. Huddleston, for the petitioners. David E. Mills, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in petitioners' income tax for 1957 in the amount of $11,264.06. The sole issue presented for our decision is the correctness of the respondent's action in determining that certain cash distributions made by Westley Shipping Company, Inc., to Caribbean Line, S.A., during 1957 resulted in a constructive dividend to petitioner David A. Aylsworth. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife residing at New Orleans, Louisiana. They filed a joint income tax return for 1957 with the director at New Orleans. Westley Shipping Company, Inc., sometimes hereinafter referred to as Westley, is a corporation organized under the laws of the State of Louisiana on January 6, 1950. Petitioner David A. Aylsworth and David T. Duncan each owned 50 percent of the outstanding stock of Westley. During 1957 Duncan served as president of Westley and petitioner was its vice president. At all times here pertinent the business of Westley *122 consisted principally of acting as a freight steamship agent for chartered (rented) vessels operating in the Gulf of Mexico and in the Caribbean Sea. Its function consisted of the complete handling of chartered ships for their owners including soliciting freight and securing cargo, obtaining crews, arranging for ports, berthing space, stevedores, watchmen, checkers, etc. Westley also acted occasionally as operator of chartered steamships in the Gulf of Mexico and the Caribbean Sea, controlling the stevedoring, loading, port entry, and payment of crews on specific voyages. On November 29, 1954, Westley entered into a joint venture with William Pennington, a resident of Guatemala City, Guatemala. The joint venture was known as Guatemala Line, and Pennington and Westley were 50 percent partners therein. The principal business of Guatemala Line was the operation of vessels between ports in the United States and Guatemala. Guatemala Line realized net profits for 1955 and 1956 in the amounts of $23,984.87 and $94,238.49, respectively. The partnership sustained a net loss for 1957 in the amount of $4,661.38. On July 27, 1956, petitioner with David T. Duncan formed a corporation under *123 the laws of the Republic of Panama known as West Line, S.A., which had an authorized capital of 5,000 shares of common stock having a par value of $10 per share. One thousand shares of common stock were issued by West Line, 500 shares each to petitioner and Duncan. On July 27, 1956, petitioner with David T. Duncan formed amother corporation under the laws of the Republic of Panama known as Guatemala Line, S.A., with an authorized capital stock of 5,000 shares of common stock having a par value of $10 per share. Guatemala Line issued 1,000 shares of its common stock, 500 shares each to William Pennington and West Line. On July 1, 1957, petitioner and David Duncan formed another corporation under the laws of the Republic of Panama known as Caribbean Line, S.A., sometimes hereinafter referred to as Caribbean, with an authorized capital stock of 7,500 shares of common stock having a par value of $10 per share. A resolution adopted by the directors of Caribbean Line authorized the issuance of a total of 6,000 shares of its capital stock for cash at a price of $10 per share. The resolution also accepted and approved the subscription of Guatemala Line and West Line each to 50 percent *124 of the 6,000 shares of stock authorized for issuance by Caribbean Line. The General Journal of Caribbean Line carries the following entry under date of July 1, 1957: Journal
General
Ledger
7-1-57
Dr.
Cr.
Subscriptions Receivable
$60,000.00
Capital Stock - Common
$60,000.00
To record the following Com. Stock
Sub
Guatemala Line, S.A. 3,000 shares
at $10.00 Ea.
West Line, S.A. 3,000 shares at
$10.00 Ea.
During the early part of July 1957, Caribbean Line purchased in Holland a motor vessel known as the "Moby Dick" for $215,000. The vessel was later renamed the "West Gulf." The joint venture Guatemala Line made a down payment on the purchase of the motor vessel Moby Dick in the amount of $72,000. Such payment was made by the issuance of two checks on July 1, 1957 and July 10, 1957, in the amounts of $5,000 and $67,000, respectively. A ledger asset account of Guatemala Line joint venture reflects a receivable in the amount of $72,000 from Caribbean Line as of July 31, 1957. Caribbean Line carried on its books a liability account to the partnership Guatemala Line in the amount of $72,000 under date of July 10, 1957. The books of Guatemala Line *125 joint venture disclose that the $72,000 receivable from Caribbean Line was eliminated on June 30, 1958, by charges to the partners Westley and Pennington in the amounts of $54,000 and $18,000, respectively. The elimination of the $72,000 receivable on the books of the partnership Guatemala Line was accompanied by an explanatory entry stating: "To charge partners with their pro rata advances made to Caribbean Line, S.A." The General Journal of Westley contains an entry made on June 30, 1958, showing "$54,000 to form affiliate Caribbean Line, S.A." The books of Westley also contain a balancing credit as of that date in the amount of $54,000 desigated "Investment - Guatemala Line." This entry was explained by a note reading: "To reflect cash advanced for Down Payment on M/V 'West Gulf'." The balance of the purchase price of the motor vessel West Gulf was financed by a mortgage loan in the amount of $143,000 obtained from the National Bank of Commerce at New Orleans. Westley made additional advances to Caribbean Line during 1957 in the total amount of $8,665.92. These advances were made for the purpose of assisting Caribbean Line to obtain capital needed by it to operate its business. *126 Caribbean subsequently repaid these advances to the extent of $2,665.92. On October 6, 1957, a charter agreement was executed by Caribbean and Westley. The agreement provided, in substance, for the charter of the motor vessel West Gulf by Westley for a period of 30 months commencing on or about July 15, 1957. It agreed to pay hire for the vessel at the rate of $7,000 per month. Westley had an option under the agreement to subcharter the West Gulf; however, it remained liable for the performance of the charter agreement. The balance sheet of Westley for 1957 shows as a current asset an amount due from its, affiliate, Caribbean Line, in the amount of $10,666. Its 1957 balance sheet does not disclose an amount attributable to the $54,000 which it had advanced to Caribbean Line. Westley's 1958 balance sheet discloses no amount due and owing from Caribbean Line. Westley had earnings and profits as of December 31, 1957, in the amount of $38,126. In his deficiency notice the respondent has determined that petitioner received a dividend distribution from Westley during 1957 which is taxable to petitioners as ordinary income in the amount of $19,063 and as long-term capital gain to *127 the extent of $3,758.25. Ultimate Finding Petitioners received a dividend distribution from Westley Shipping Co., Inc., during 1957 of $30,000. Opinion Petitioners contend that the advances made by Westley during 1957 in the total amount of $60,000 [1] to Caribbean Line constitute loans by Westley to Caribbean. The respondent has taken the position that these advances constitute dividend distributions, one-half of which was constructively received by petitioner in 1957. Petitioner, together with David T. Duncan and William Pennington, organized three foreign corporations, West Line, Guatemala Line, and Caribbean Line under the laws of the Republic of Panama in order to acquire the seagoing motor vessel Moby Dick (subsequently renamed West Gulf) which they intended to charter and operate in a manner similar to that under which they had previously operated chartered vessels through a single United States corporation, Westley Shipping Co., Inc., as well as a partnership *128 consisting of that corporation and William Pennington, doing business as Guatemala Line. Although it appears from the record that West Line and Guatemala Line had each agreed to subscribe to one-half of the proposed issuance of the stock of Caribbean Line, we are unable to find from the record that any of the stock of the latter corporation was ever actually purchased or that it had acquired even $1 of operating capital prior to the advances made to it by Westley and Pennington. Petitioner stated at the trial that the $54,000 advance to Caribbean Line by Westley during July 1957 and the $18,000 amount contemporaneously advanced to Caribbean Line by William Pennington were intended by the parties to represent loans which eventually would be repaid out of the profits of Caribbean. However, in making the advances in question to Caribbean during 1957, the parties did not even adopt the form of a loan transaction. No note or other instrument purporting to show an indebtedness was executed. There is no indication that any time was fixed for the repayment of these advances. The record fails to suggest that any interest was ever to be charged Caribbean for the use of the money advanced. No *129 security for the advances in question was ever received or even requested by Westley and Pennington. If there was any agreement existing between petitioner and Caribbean that these advances were in the nature of loans, the terms of such agreement are not disclosed by the record. If, as petitioner contends, these advances were to be repaid, the only source of repayment would have been the future profits of Caribbean. In view of the almost total absence of evidence indicating that the transaction in question was intended by the parties to constitute a bona fide indebtedness, we are unable to accept the petitioner's contention that such an indebtedness was created by this transaction. We are in agreement with the respondent's determination that the advances made by Westley in the amount of $54,000 during July 1957, together with advances subsequently made during that year in the amount of $6,000, constitute dividend distributions by Westley which, to the extent of one-half thereof, are chargeable to petitioner. Petitioners make no contention here that the distribution in question qualifies as the sale or exchange of a capital asset. A resolution adopted by the directors of Caribbean *130 Line authorized the issuance of 6,000 shares of its stock and accepted the subscription of Guatemala and West Line each to one-half the 6,000 shares authorized for issuance. However, it does not appear that either of the subscribers to the stock of Caribbean paid it any consideration. [2]
So far as appears from the record herein, at the time of the purchase of the motor vessel Moby Dick during July 1957, Caribbean Line was totally without capital. Accordingly, the distribution of $60,000 by Westley to Caribbean for the purpose of providing it with funds for making a down payment on the purchase of the Moby Dick had the effect of discharging the obligations of West Line and Guatemala Line to purchase $60,000 worth of capital stock of Caribbean. Such distributions of corporate funds made to a shareholder or to a prospective shareholder who was obligated to purchase stock in the same corporation or in another corporation consistently have been held to constitute dividend distributions to him. ; *131 ; , affd. - F. 2d - (C.A. 8, July 3, 1963). Such a constructive distribution of dividends to West Line and Guatemala Line would inure to the direct financial benefit of petitioner because of the increase in value of his equity therein. In substance, the transaction here in question was the same as if the petitioner had personally withdrawn $30,000 from the earnings ofwestley and subsequently invested it as risk capital in Caribbean Line. He cannot be permitted to avoid the consequences of such a withdrawal of corporate funds from Westley by the expedient of causing it to pay the advances in question directly to Caribbean without passing through his hands. For the above-stated reasons we are of the opinion that the withdrawal of $60,000 from the earnings and profits of Westley during July 1957 and the investment of such funds as risk capital in Caribbean Line constitute a dividend distribution to petitioner to the extent of one-half thereof, or $30,000. The earnings and profits of Westley as of December 31, 1957, were $38,126. One-half thereof, or $19,063, is taxable to petitioner as ordinary income, *132 and the balance of the distribution in excess of his basis in the stock of Westley is taxable as long-term capital gain, in accordance with the respondent's determination, which we here sustain. Decision will be entered for the respondent. Footnotes
1. Consisting of $54,000 advanced during July 1957 to provide funds for the down payment needed to purchase the Moby Dick, plus $8,665.92 later advanced for operating funds, less $2,665.92 which was repaid.↩
2. Whether or not certificates of its shares of stock were ever actually issued by Caribbean to West Line and Guatemala Line is not disclosed by the record.↩